MARION L. EVANS, as Executrix, etc., Plaintiff, *v.* SUPREME COUNCIL OF THE ROYAL ARCANUM et al., Defendants.*

(Supreme Court, Oneida Trial Term, June, 1915.)

*Benefit societies — amendment to by-laws as to monthly payments — controversy as to amount due under benefit certificate.*

ACTION to determine a controversy.

Lee & Dowling, for plaintiff.

Howard C. Wiggins, for defendants.

CROUCH, J. The facts in full are concisely set forth in the agreed statement upon which the case is submitted.

This action is not brought to recover money claimed to be due under the benefit certificate issued to plaintiff's testator. The executrix as such concededly has no interest in the proceeds of such certificate.

The object of the action as originally brought by Evans, and as continued by the substitution of his executrix as plaintiff, is to determine a controversy between the parties concerning the amount of the monthly payment to be made by the member under the contract. By virtue of amendments to its by-laws made by defendant society in 1905, Evans was required to pay six dollars and thirty-three cents each month until he attained the age of sixty-five years and thereafter sixteen dollars and eight cents per month. He became sixty-five in February, 1913. At the time the 1905 amendments were adopted the monthly assessment which Evans was bound to pay was three dollars and forty-four cents.

Claiming that the increased assessments were

---

*Affirmed by the Appellate Division, Fourth Department, November 21, 1917.—[REPR.

invalid and void as exceeding the powers of the corporation and because conflicting with his contract rights, Evans paid them each month down to October, 1913, under protest and reserving all rights and privileges to which he might be entitled under the laws of this state.

In October, 1913, Evans tendered as the assessment for that month both the sum of three dollars and forty-four cents and the sum of six dollars and thirty-three cents. Such tenders were refused upon the ground that the amount due was sixteen dollars and eight cents; and the defendant notified Evans that unless he paid the latter sum "he would be suspended as a member of said defendants and would lose all the moneys paid by him to such defendants and any and all the benefits accruing by and under the by-laws of the defendants."

Here were all the elements of a genuine controversy. On one hand, Evans' position was sustained by what was then the settled law of this state laid down in a long line of decisions by the Court of Appeals, the latest of which, *Green* v. *Royal Arcanum*, 206 N. Y. 591, had then been handed down only a few months before and involved this very contract. On the other hand, defendants' contention was sustained by the law of Massachusetts, its corporate domicile.

Evans had the right to have the controverted question judicially determined.

He accordingly commenced this action for that purpose on the 30th day of October, 1913, by the service of a summons and complaint, affidavit, undertaking and temporary injunction upon defendant. An answer was interposed and the case, thus at issue, slumbered pending the decision of the appeal to the United States Supreme Court which had been taken in the *Green* case. That decision came in June, 1915, and sustained the contention of defendant. Meanwhile, and on March 23, 1915, Evans had died.

Subsequently, his executrix was substituted as plaintiff and a supplemental complaint was served under an order of this court, the original answer standing as the answer thereto.

The final decision in the *Green* case disposes of the question involved in this action as originally brought. There remains for decision simply the question whether, under all that was done and omitted to be done since the commencement of this action, Evans' contract is alive or dead. Must the judgment be that, upon payment by plaintiff of the monthly assessment from and including October, 1913, to the date of Evans' death at the rate of sixteen dollars and eight cents, the contract be adjudged in good standing; or that, because of Evans' failure to pay or tender the monthly sum of sixteen dollars and eight cents, now adjudged to be the legal and valid rate, the contract was forfeited and all benefits thereunder totally lost?

The contract provided that suspension from or a voluntary severance of connection with the order should forfeit all rights; also, that a member failing to pay a regular assessment within the time limited should stand suspended. Hence, it is argued that, as Evans did not pay or offer to pay the assessment now determined to have been legal and valid, he stood suspended and thereby forfeited all rights. If that be so, there can be no question under the array of authorities cited that this court cannot grant relief by reinstating the forfeited contract. But I have been cited to no authority holding that a court of equity, in a fair dispute where there is reasonable doubt as to the rights of the parties, cannot upon such terms as will prejudice neither hold their relations in *statu quo* pending decision. On the contrary, there is some intimation from worthy sources that such power exists and may properly be used in such a case. *Langan* v. *American Legion of Honor,* 174 N. Y. 266; *Makman*

v. *Independent Order Free Sons of Judah,* 86 Misc. Rep. 13.

It is probably true that a member must, as one of the cases puts it, preserve his insurance *cum onere.* But that burden may perhaps be borne otherwise than by compliance with the society's contention on the disputed point, with restitution if that contention prove wrong. It may conceivably be borne, as it was here, by a bond conditioned to secure the society from any loss. Under that bond, the ultimate payment to the defendant of all assessments was secured. If defendant deemed itself insecure, the court could at any time upon application add to such security, even perhaps to the extent of requiring plaintiff to make the payments in the amount contended for by defendant with provision for restitution. But no such application was made.

The plain object of the injunction order was to preserve the subject matter and to maintain the *status quo.* I think its language was appropriate for that purpose.

If the court had power to make that order, then its object was attained. The reasons which have constrained equity to hold that " delinquency cannot be tolerated or redeemed except at the option of the company " (*New York Life Ins. Co.* v. *Statham,* 93 U. S. 24) do not obtain here. There was no delinquency. Plaintiff, with the membership contract in full force and offering to do equity, comes into a court of equity to have a fair dispute adjudicated. The court is in a position to preserve and protect every essential of the contract and every right thereunder of the parties to it.

My conclusion is that judgment should go for plaintiff. Findings and decree to be agreed upon or settled upon notice.

Judgment accordingly.